UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN DOKES,

    Plaintiff,

v.

22ND DISTRICT COURT, VALDEMAR
L. WASHINGTON, and PAMELA A.
ANDERSON

    Defendants.
_____/

Case No. 11-12219
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 27, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motions for Summary Judgment [dkt 15, 27]. The parties have fully briefed the motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Defendants' initial Motion for Summary Judgment [dkt 15] is GRANTED and Defendants' Second Motion for Summary Judgment [dkt 27] is DENIED as moot.

## II. BACKGROUND

**A. FACTUAL BACKGROUND**

Plaintiff was first employed in the 22nd District Court ("the district court"), in the City of Inkster, as a court officer from 1990 until 2000. In July 2010, Judge Sylvia James, then Chief Judge of the district court,

contacted Plaintiff, who at that time resided in Atlanta, Georgia. Judge James inquired into whether Plaintiff would consider replacing a fired court officer on a temporary basis. Plaintiff agreed to do so. Plaintiff worked at the district court on a temporary basis in July and August of 2010. Plaintiff states that, in August 2010, Judge James decided to hire Plaintiff on a "permanent" basis. This is reflected in a district court personnel action form ("Action Form") that purported to change Plaintiff's employment status from "temporary" to "permanent (regular)." Plaintiff claims further that, at some point after this, Judge James informed him that "as long as [he does] his job, [he will] have a job."

Additionally, Plaintiff claims that approximately three months after Plaintiff returned as a court officer, Defendant Pamela Anderson, the district court's administrator, gave Plaintiff a letter of employment ("the Letter") purportedly signed by Judge James. Plaintiff requested the Letter for the purpose of his application to lease an apartment. The Letter states as follows:

> Pursuant to our conversation, we are honored that you would drop everything, uproot yourself and come back again to be our senior court officer. Therefore, we are committed to seeing that your employment here at the 22nd District court in Inkster is secured until such time you decide to retire and/or leave us again.
>
> Very truly yours,
>
> Sylvia A. James, Chief Judge

On April 18, 2011, during which time Judge James was on leave while being investigated by the state's Judicial Tenure Commission, Plaintiff was terminated from his position as court officer. Plaintiff now alleges that he was given a "lifetime contract" by Judge James, that he could be fired for "just cause" only, that his termination from the Court breached his just cause employment contract, and that Defendants violated 42 U.S.C. § 1983 by depriving him of his protected property interest in his employment without due process of law.

**B. PROCEDURAL BACKGROUND**

On May 20, 2011, Plaintiff filed this Complaint in Federal Court, alleging theories of breach of contract, breach of implied contract, termination without authority, promissory estoppel and violations of 42 USC §1983.

2

On June 13, 2011, this Court entered an Order dismissing Plaintiffs state law claims, leaving only Defendants' alleged violation of 42 U.S.C. § 1983. In response, on June 23, 2011, Plaintiff filed a second lawsuit in Wayne County Circuit Court, re-alleging his state law claims of breach of contract, breach of implied contract, termination without authority and promissory estoppel.

On January 20, 2012, Defendants filed the instant Motion. On February 10, 2012, Defendants filed a similar motion for summary disposition in the Wayne County Circuit Court. On May 24, 2012, the Wayne County Circuit Court entered an Order granting summary disposition to Defendants' on Plaintiff's state law claims.

On May 31, 2012, Defendants sought leave to file a second Motion for Summary Judgment, stating that the state court's granting of summary disposition raised issues of *res judicata* in the instant case. The Court granted leave and Defendants filed their Second Motion for Summary Judgment on August 3, 2012.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the

3

pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff claims that he had a constitutionally protected property interest in his continued employment at the district court and that this employment could be terminated only for good or just cause and only after affording him an opportunity to be heard.

The Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1; *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 n. 3 (1985). To establish a due process violation, a plaintiff must first establish the existence of a constitutionally protected property or liberty interest. *Silver v. Franklin Twp. Bd. of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir. 1992). "Property interests are not created by the Constitution, but are created and defined by 'existing rules or understandings that stem from an independent source.'" *Sutton v. Cleveland Bd. of Ed.,* 958 F.2d 1339, 1348 (6th Cir.1992) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)). To have a constitutionally cognizable property interest, a person must have more than an abstract need or desire for it; he must have more than a unilateral expectation of it; he must, instead, have a legitimate claim of entitlement to it. *See Roth,* 408 U.S. at 577.

Generally, employment relationships are terminable at the will of either party. *Lynas v. Maxwell Farms,* 279 Mich. 684, 687 (1937). However, the presumption of at-will employment can be rebutted so that contractual obligations and limitations are imposed on an employer's right to terminate employment. *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579 (1980). The presumption of employment at-will is

4

overcome with proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause. *Rood v. General Dynamics Corp.*, 444 Mich. 107, 117 (1993).

Courts have recognized the following three ways by which a plaintiff can prove such contractual terms: (1) proof of "a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause;" *Rood* at 117 (citing *Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 636 (1991)); (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal, *Bullock v. Auto. Club of Michigan*, 432 Mich. 472, 479 (1989); or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee, *Toussaint*, 408 Mich. at 615.

### A. CONTRACTUAL PROVISION

The Court finds that neither a contractual provision for a definite term of employment nor one forbidding Plaintiff's termination without just cause exists in this case. First, there is no evidence in this case indicating that Plaintiff was ever given a definite term of employment. Second, even assuming the truth of the assurance purportedly given to Plaintiff by Judge James—that as long as Plaintiff did his job, he would have a job—and assuming again that such an assurance constituted a "contractual provision," the statement nevertheless does not "forbid" discharge absent just cause. The word "forbid" is defined as "to command (someone) not to do something."[1] The purported statement by Judge James does not *forbid* anything, since it was allegedly made to Plaintiff, and does not "command" him to do anything.

### B. EXPRESS AGREEMENT

The Court finds that there is also no express agreement, either written or oral, regarding job security that is clear and unequivocal. In fact, there is no "express agreement" whatsoever in this case. Plaintiff relies on the alleged statement by Judge James, but there is no expression of mutuality or a "meeting of the minds" indicated

---

[1] WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 496 (1984).

by this unilateral declaration. Plaintiff also relies on the Letter. This too, is not an agreement. The letter was written several months after Plaintiff had already began working. Plaintiff concedes that the Letter was not written to memorialize any agreement with Defendants, but instead was for the purpose of Plaintiff's application for an apartment lease. Moreover, Judge James denies having written the Letter or authorizing anyone to do so. As such, Plaintiff cannot establish this element.

### C. IMPLIED CONTRACTUAL PROVISION

Last, Plaintiff cannot establish any implied contractual provision where the district court's policies and procedures instilled a "legitimate expectation" of job security in Plaintiff. The district court's policy was that all of its employees were employed "at-will." This is established through statements made by Judge James that she "would have never authorized the issuance of a letter which 'guaranteed' anyone's employment," and that "employees were always informed of the fact that their employment was at-will." This is further evidenced by the district court's Policy Manual, which Plaintiff was expected and required to read. The Policy Manual states that all court employees are at-will employees and that nothing could alter the at-will relationship except a written contract for that expressed purpose, signed by both the employee and the Chief Judge. No such contract exists in this case.

In support of his purported "legitimate expectation" of job security, Plaintiff relies upon the Action Form and the Letter. The Action Form indicates that Plaintiff went from "temporary" to "permanent (regular)" employment. The Court finds that the word "permanent" in the Action form does not indicate that Plaintiff became a "lifetime" employee. Here, "permanent" meant "not temporary," as Plaintiff himself states that he was initially hired to temporarily fill the court officer role, but was later offered a regular full-time—or "permanent"—position. This interpretation is supported by the fact that, in the Action Form, the word "permanent" appears below "temporary" as one of two choices regarding employment type and is further qualified by the word

"regular" appearing in parentheses. No reasonable jury could determine that under these circumstances, the word "permanent" meant Plaintiff's lifetime employment with the district court.

As to the Letter, the Court again notes that Anderson gave it to Plaintiff several months after Plaintiff accepted the job and did so not to memorialize an employment contract, but to assist Plaintiff in securing an apartment. Even if Plaintiff interpreted the Letter to retroactively deem his employment to be life-long, his unilateral expectation is insufficient in this case, as Plaintiff must instead have a "legitimate claim of entitlement to such employment." *See Roth*, 408 U.S. at 577.

For these reasons, no reasonable jury could find that Plaintiff had a "lifetime" or "just cause" employment contract with the district court. As such, Plaintiff cannot establish a constitutionally protected property interest in his employment with the district court.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [dkt 15] is GRANTED.

IT IS FURTHER ORDERED that Defendants' Second Motion for Summary Judgment [dkt 27] is DENIED as moot.

IT IS SO ORDERED.

Date: September 27, 2012

s/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT JUDGE